```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF INDIANA
                       HAMMOND DIVISION
```

```
CHRISTINE MATTHEWS,              )
                                 )
     Plaintiff,                  )
                                 )
vs.                              )   NO. 2:04-CV-17
                                 )
STATE FARM MUTUAL AUTOMOBILE     )
INSURANCE COMPANY,               )
                                 )
     Defendant.                  )
```

## OPINION AND ORDER

This matter is before the Court on the (1) Motion for Partial Summary Judgment filed by Defendant, State Farm Mutual Automobile Insurance Company, on January 18, 2005; and (2) Amended Motion for Summary Judgment, filed by Defendant, State Farm Mutual Automobile Insurance Company, on March 22, 2005.  For the reasons set forth below, the Motion for Partial Summary Judgment is **DENIED AS MOOT** and the Amended Motion for Summary Judgment is **GRANTED**.  The Clerk is **FURTHER ORDERED** to close this case.

BACKGROUND

In her complaint, Matthews seeks compensation for physical injuries she suffered stemming from a car accident on November 9, 1992.  At the time, she was the named insured in the applicable policy issued by State Farm.  State Farm contends that it has already made

all payments Matthews was due under the policy limits.

This case has a long and tortured procedural history. On August 20, 2004, State Farm filed a motion for partial summary judgment. However, State Farm neglected to provide pro se Plaintiff with the required notice of the consequences of failing to respond to State Farm's factual assertions in its motion, as required by *Timms v. Frank*, 953 F.2d 281, 285 (7th Cir. 1992). The Court issued the *Timms* notice to Plaintiff in an order dated August 25, 2004.

On October 7, 2004, State Farm orally withdrew its August 20, 2004 motion for partial summary judgment, without prejudice. Following additional discovery, State Farm filed another motion for partial summary judgment on December 20, 2004, and again omitted the *Timms* notice to Matthews. In an order dated January 10, 2005, this Court therefore denied State Farm's motion for partial summary judgment, but granted it leave to refile the motion on or before January 18, 2005, after providing the requisite *Timms* notice to Plaintiff. This time, Sate Farm filed the requisite *Timms* notice and timely filed the instant Motion for Partial Summary Judgment on January 18, 2005.

On March 17, 2005, State Farm sought leave to amend its motion for partial summary judgment to reflect it seeking summary judgment on all of Plaintiff's claims (not partial summary judgment, as inadvertently stated in the Motion for Partial Summary Judgment). State Farm did not seek leave to amend the memorandum in support,

claiming that the memorandum and designation in support of the Motion for Partial Summary Judgment already sought full relief on all elements of Plaintiff's claims.  In an order dated March 18, 2005, Magistrate Judge Paul Cherry granted the motion for leave to amend the summary judgment motion, and ordered that the filing of the amendment would not alter the already set briefing schedule.  On March 22, 2005, State Farm filed its Amended Motion for Summary Judgment, and served another *Timms* notice to Matthews.  Because Magistrate Judge Paul Cherry granted State Farm's motion to amend, this Court **DENIES AS MOOT** State Farm's Motion for Partial Summary Judgment.  The remainder of this Order deals with State Farm's Motion for Summary Judgment.

It is unclear whether Matthews intended to file a response to the Motion for Partial Summary Judgment or the Motion for Summary Judgment.  Matthews did file a "Motion of the Facts: Action & Reson [sic.]" (hereinafter "Motion of the Facts") on January 12, 2005, which could be construed as an attempt to controvert State Farm's statement of material facts in its motion for partial summary judgment (filed on December 20, 2004, but denied by this Court on January 10, 2005, for failure to provide Matthews with a *Timms* notice).  Additionally, Matthews filed a "Motion to Give a Laymen [sic] Account of an Event that Happen [sic] in Nov 92 from an Expert in Forensic Science (Ret Federal Employee) Personnel Trained by D.O.D." (hereinafter "Motion to Give a Layman Account"), on March 14, 2005.

DISCUSSION

The standards that generally govern summary judgment motions are familiar. Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper only if it is demonstrated that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In other words, the record must reveal that no reasonable jury could find for the nonmovant. *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 335 (7th Cir. 1991); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In deciding a motion for summary judgment, a court must view all facts in the light most favorable to the nonmovant. *Anderson*, 477 U.S. at 255; *NUCOR Corp. v. Aceros Y Maquilas De Occidente*, 28 F.3d 572, 583 (7th Cir. 1994).

The burden is upon the movant to identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," if any, that the movant believes "demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Once the movant has met this burden, the nonmovant may not rest upon mere allegations but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Becker v. Tenenbaum-Hill Assocs., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990); *Schroeder v. Lufthansa German Airlines*, 875

F.2d 613, 620 (7th Cir. 1989). "Whether a fact is material depends on the substantive law underlying a particular claim and 'only disputes over facts that *might affect the outcome* of the suit under governing law will properly preclude the entry of summary judgment.'" *Walter v. Fiorenzo*, 840 F.2d 427, 434 (7th Cir. 1988) (emphasis in original) (citing *Anderson*, 477 U.S. at 248).

"[A] party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a *genuine* issue of material fact which requires trial." *Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir. 1988) (emphasis in original); *see also Hickey v. A.E. Staley Mfg.*, 995 F.2d 1385, 1391 (7th Cir. 1993). Therefore, if a party fails to establish the existence of an essential element on which the party bears the burden of proof at trial, summary judgment will be appropriate. In this situation, there can be "'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

First, the Court acknowledges that Matthews is a pro se Plaintiff and recognizes that the briefs of pro se litigants need not be held to the same standard as those by counseled litigants. *See Glick v. Gutbrod*, 782 F.2d 754, 755 n. 1 (7th Cir. 1986) (stating pro se litigant's briefs may be held to a lower standard than those prepared

by counsel).  However, it is not this Court's obligation to do Matthews' research or make arguments for her. *United States v. Smith*, 26 F.3d 739, 743 (7th Cir. 1994) (courts need not research and construct legal arguments for parties).

It is difficult to determine whether Matthews intended her Motion of the Facts, filed on January 12, 2005, to serve as a response to State Farm's initial motion for partial summary judgment.  In an order dated February 16, 2005, Magistrate Judge Cherry interpreted this motion as a motion to compel because the substance of the motion relates in part to Matthews' objection to State Farm's redaction of information contained in Matthews' claim file.  However, State Farm states in its reply memorandum in support of summary judgment that it construes Matthews' motion as a response to State Farm's motion for summary judgment.  Matthews additionally filed the Motion to Give a Layman Account.  On April 1, 2005, Magistrate Judge Cherry denied this motion without prejudice because Plaintiff failed to request any specific relief.  Keeping in mind that this Court must construe the facts in the light most favorable to Plaintiff, as the party opposing the motion for summary judgment, the Court has considered Matthews' Motion of the Facts and Motion to Give a Layman Account in determining the undisputed facts in this case (to the extent Matthews complied with Northern District of Indiana Local Rule 56.1 and set forth facts with appropriate citations to discovery responses, affidavits, depositions, or other admissible evidence).

Undisputed Facts

Matthews alleges she is entitled to compensation for physical injury and lost wages because State Farm failed to fulfill the provisions of the following coverages in her insurance policy: A, C, D250, G250, H, R1, U1, W and S.  (Compl. ¶ 12.)  Plaintiff alleges that she was involved in a hit-and-run accident while driving a rental vehicle on November 9, 1992.  (Compl. ¶ 6; Pl.'s Answer to Req. for Admis. ¶ 1.)  Additionally, in her Motion of the Facts, Matthews states she is concerned she was carjacked and possibly kidnapped.

Matthews admits that on or about May 24, 1996, she initiated an arbitration process with State Farm "for securing the additional previously withheld insurance payments stemming from the December 4, 1992 filed claim with [State Farm]," which resulted in a July 15, 1999 decision that was unfavorable to Matthews.  (Compl. ¶ 10.)  The AAA Demand for Arbitration, signed by State Farm's counsel and dated May 13, 1998, states that the claim at issue is an alleged hit-and-run, and the nature of the dispute and injuries alleged were:  "[c]laimant believes she is entitled to uninsured motorist coverage for this one vehicle accident.  State Farm contends that the evidence shows that there was no hit and run; the claimant merely ran off the road due to her drunken condition.  Therefore, the accident does not come within the policy provision relating to hit and run accidents."  (R. 266.)[1]

---

[1] Documents contained in State Farm's designation of evidence, filed contemporaneously with its Motion for Partial Summary Judgment, are referenced by bates stamp numbers as R.___.

-7-

The arbitrators' decision, issued July 29, 1999, states "[t]he claim of CHRISTINE MATTHEWS against STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY is hereby DENIED."  (R. 235; Ex. A to Pl.'s Answers to Req. for Admis.)(emphasis in original).  Matthews subsequently complained that State Farm "took over the meeting in the office at the A.A.A." (Motion of the Facts, p. 2), and has alleged that State Farm has conspired against her and withheld evidence.  (*See* Pl.'s letter to State Farm dated November 20, 1999, R. 230-32.)

State Farm admits that Matthews was in an accident on November 9, 1992.  (Answer ¶ 6.)  It is undisputed that on the date of the accident, Matthews was the named insured in a policy of insurance issued by State Farm that afforded certain coverage in accordance with the terms, conditions, and limitations as defined in the policy.  (*See* Ex. A, Policy No. 582 144-C14-14B (the "Insurance Policy").)  The Insurance Policy provides in coverage C for $25,000 in medical payments.  (Ex. A; Declaration Page.)  Matthews does not dispute that State Farm has paid to Matthews or her health care providers $25,000 in medical payments coverage for the accident at issue. (R. 5, 7, 9, 10-12, 14-23, 25-26; *see also* Affidavit of Keith Marxkors, State Farm Team Manager, ¶ 3.)

<u>Liability Under The Insurance Policy</u>

    <u>Coverage U1</u>

State Farm argues that Matthews' claim for uninsured coverage is barred as untimely. Specifically, State Farm claims that Indiana's Uniform Arbitration Act requires review of an arbitration decision to be made within 90 days after the award is final.

Coverage U provides the uninsured coverage in the Insurance Policy. Under Coverage U1, an uninsured motor vehicle means:

> (2) For *bodily injury* a "hit-and-run" land motor vehicle whose owner or driver remains unknown and which strikes:
> a.   the *insured*; or
> b.   the vehicle the *insured* is *occupying* and causes *bodily injury* to the *insured*.

(Insurance Policy, Ex. A, p. 11) (emphasis in original). This would be the proper section under which Matthews could seek uninsured coverage for a hit-and-run accident. However, the arbitration involved Matthews' claim for uninsured coverage. (Compl. ¶ 10; R. 266.) And it is undisputed that the AAA arbitrators denied Matthews' claim in a letter dated July 29, 1999. (R. 235.)

Under Indiana law, an arbitration award may be vacated for, among others reasons, demonstrating that the award was "procured by corruption or fraud." Ind. Code § 34-57-2-13(a)(1). When a party is dissatisfied with an arbitration award, and believes it is not valid, they must timely challenge the award by filing a motion to vacate the award.

To the extent Matthews complains that State Farm, "took over" the

arbitration, the Court interprets this as a challenge to the underlying validity of the award, and "the only avenue available for such relief is a timely suit to vacate." *Int'l Union of Operating Eng'rs, Local 150 v. Centor Contractors, Inc.*, 831 F.2d 1309, 1311 (7th Cir. 1987) (finding challenges made to the underlying validity of the award as ones that could have been asserted in an action to vacate the award). Matthews also argues there is a dispute about the events on the night of the accident, accusing law officials of lying in their written reports. (Motion of the Facts, p. 3.) Again, to the extent Plaintiff believes the arbitration was tainted by unreliable evidence, a motion to vacate would have been the proper motion to file. Finally, Plaintiff's alleged inability to present a true account of the events at the arbitration could have been addressed in a motion to vacate the arbitration award.

In this case, the Uniform Arbitration Act, adopted in Indiana, provides the appropriate statute of limitation. *See, e.g., Sheet Metal Workers Local Union No. 20 v. Baylor Heating and Air Conditioning, Inc.*, 688 F. Supp. 462, 471 (S.D. Ind. 1988) (applying Uniform Arbitration Act, as adopted in Indiana, in analyzing timeliness of challenge to arbitration award). Section 34-57-2-13(b) prescribes a 90-day time limit for the filing of a motion to vacate, and the same time limit is imposed by Section 34-57-2-14 on a motion to modify or correct an arbitration award. With regard to judicial review of an arbitration:

> An application under this section shall be made within ninety (90) days after the mailing of a copy of the award to the applicant, except that, if predicated upon corruption or fraud or other undue means, it shall be made within ninety (90) days after such grounds are known or should have been known.

Ind. Code § 34-57-2-13(b).

The purpose of the short time period for moving courts to vacate an award "is to accord the arbitration award finality in a timely fashion." *Chauffers, Teamsters, Warehousemen and Helpers, Local Union No. 135 v. Jefferson Trucking Co., Inc.*, 628 F.2d 1023, 1027 (7th Cir. 1980). "The purpose of the [Indiana Arbitration Act] is to provide a more efficient, expeditious manner in which to resolve disputes than traditional litigation." *Groves v. Groves*, 704 N.E.2d 1072, 1076 (Ind. Ct. App. 1999). To promote this goal, the time limits for reconsideration or vacation of an award by the arbitrator by the court "have been strictly enforced; for, such time limits ensure that an award by an arbitrator will become effective and enforceable in a timely and expeditious manner." *Id.* (citing *Chauffers*, 628 F.2d at 1027).

In this case, the arbitration award was mailed to the parties on July 29, 1999. (R. 235.) Plaintiff did not file her complaint until March 4, 2004, well over four years after the arbitration award, and significantly after the 90-day time limit. Even analyzing Matthews' claim under when the alleged fraud should have been known, her suit is still tardy. Matthews wrote a letter to State Farm on November 20,

-11-

1999, after she received the arbitration award, accusing State Farm's counsel of being involved in a conspiracy to withhold evidence. (R. 230-32.) Therefore, at the latest, Matthews was aware of the alleged fraud no later than November 20, 1999. This Court agrees with State Farm that, to the extent Matthews believes she was kidnapped or carjacked, this Court sees nothing in the Insurance Policy that would provide compensation for such an alleged event.

As the Court in *Chauffers* found, because Matthews failed to file a motion to vacate or correct an arbitration award within the time prescribed by the statute, Matthews "is therefore barred from prosecuting [her] claim to invalidate the award." *Chauffers*, 628 F. 2d at 1027. Therefore, because Matthews failed to file a timely motion to vacate the arbitration award, she is barred from prosecuting the present claim for uninsured motorist benefits. As Matthews did not timely move to vacate the award, we need not decide whether, as a substantive matter, State Farm counsel's alleged monopolization of the arbitration proceeding would be a sufficient ground to vacate the award.

Coverage W

Aside from Plaintiff's claim for uninsured coverage, neither party argues that the arbitration covered Matthews' current claims under provisions A, C, D250, G250, H, R1, W, and S. Therefore, the Court will analyze Plaintiff's claims under these provisions on a

-12-

contractual basis. Summary judgment is proper in a contractual interpretation claim unless there are genuine issues of material fact that can only be resolved by the trier of fact. *Zemco Mfg. Inc. v. Navistar Int'l Transp. Corp.*, 270 F.3d 1117, 1123 (7th Cir. 2001). It is well established that the interpretation of an unambiguous contract is a question of law. *Id.*

Coverage W is for an "underinsured motor vehicle." (Insurance Policy, p. 11.) It provides that State Farm will pay "damages for *bodily injury* an *insured* is legally entitled to collect from the owner or driver of an *underinsured motor vehicle*." *Id.* (Emphasis in original.) As State Farm points out, this underinsured coverage is not available "UNTIL THE LIMITS OF LIABILITY OF ALL BODILY INJURY LIABILITY BONDS AND POLICIES THAT APPLY HAVE BEEN USED UP BY PAYMENT OF JUDGMENTS OR SETTLEMENTS." *Id.* (Emphasis in original.) The Insurance Policy specifies that an underinsured motor vehicle "does not include a land motor vehicle . . . (6) defined as an *uninsured motor vehicle* in *your* policy." *Id.* (Emphasis in original.) Because Coverage U1 specifies that for bodily injury, a hit-and-run vehicle which strikes the insured is an uninsured motor vehicle, Coverage W (for an underinsured vehicle) does not apply to a hit-and-run accident.

### Coverage A

Coverage A provides insurance "which an *insured* becomes legally

-13-

liable to pay because of: a. *bodily injury* to others, and b. damage to or destruction of property including loss of its use" which is caused by an accident resulting from the ownership, maintenance or use of "your car." (Insurance Policy, Ex. A, p. 5.) The coverage therefore applies to claims brought against an insured. (*Id.*, p. 4.) Matthews admits that she was not the cause of any damage or injury to any third person arising out of the accident on November 9, 1992, and that the other driver alleged to have been involved in the accident was never identified. (Pl.'s Answer to Req. for Admis., Nos. 1, 5.) Therefore, to the extent her claims for breach of contract rest upon the provisions of Coverage A, summary judgment is warranted in favor of State Farm.

Coverage C

Coverage C extends over medical payments coverage. The policy provides up to $25,000 for reasonable medical expenses for bodily injury caused by an accident. (Insurance Policy, Ex. A, p. 8; Declarations Page.) Matthews has not controverted that State Farm paid to her or her health care providers $25,000 in medical payments coverage stemming from the accident at issue. (R. 5, 7, 9, 10-12, 14-23, 25-26.) According to Keith Marxkors, State Farm Team Manager who oversaw Matthews' claim under the insurance policy, he has reviewed the claim file and determined that State Farm paid $25,000 for medical care received by Matthews for this claim. (Marxkors Aff. ¶¶ 1, 3.)

Because State Farm has complied with the terms of the Insurance Policy, it could not have breached its contract with Matthews regarding Coverage C.

Coverages D250, G250, R1

Coverage D provides coverage for loss to the insured's car which is not caused by a collision. (Insurance Policy, Ex. A, p. 16.) Coverage G provides coverage for loss to the insured's car caused by a collision. (Insurance Policy, Ex. A, p. 16.) Coverage R provides for the payment of up to $16 a day up to the point that State Farm determines the rental car to be a total loss up to a total of $400. (Insurance Policy, Ex. A., pp. 17-18.) On January 25, 1994, State Farm paid a claim for the total loss of the rented vehicle for $7,590. (R. 24, 423-25.) The payment included $250 for rental reimbursement. (R. 24; Marxkors Aff. ¶ 2.)

Plaintiff's rental or collision claims under coverages D, G and R are barred by the applicable statute of limitation. Under Indiana law, the statute of limitation for breach of a written contract is ten years. Ind. Code § 34-11-2-11; *see also Del Vecchio v. Conseco*, Inc., 788 N.E.2d 446, 450 (Ind. Ct. App. 2003). State Farm's payments for $7,590 for the vehicle and $250 for rental reimbursement were made on January 25, 1994. Therefore, any breach of contract claim should have been filed no later than January 25, 2004. In this case, Matthews filed her complaint on March 4, 2004. Therefore, the claims for

breach of contract under coverages D, G, and R are barred by the applicable ten year statute of limitations.

Coverage H

Coverage H provides emergency road service coverage including one hour of mechanical labor at the place of breakdown, towing, and the cost for delivery of gas, oil, loaned battery or changing a tire. (Insurance Policy, Ex. A, p. 17.)  Specifically, Coverage H states that it will pay the fair cost incurred by the insured for towing, labor, etc.  Matthews has failed to point to anything in the record, and the Court is unaware of any evidence, showing that she personally incurred any costs for towing the vehicle after the accident, or that State Farm rejected any claim by her for reimbursement of such costs. Consequently, summary judgment in favor of State Farm is appropriate to the extent Matthew's breach of contract claim rests upon Coverage H.

Coverage S

Finally, Coverage S provides coverage if the insured experiences certain dismemberment or loss of sight as a direct result of the accident.  (Insurance Policy, Ex. A, p. 19.)  To receive benefits under Coverage S, the insured must lose "the foot or hand, cut off through or above the ankle or wrist" or "the whole thumb or finger" or "all sight."  *Id.*  In response to a State Farm interrogatory

questioning whether Matthews had lost a hand, foot, thumb, finger, or all of her sight, Matthews answered that for two months following the incident she had major visual impairment, and that she needs major surgery on her feet.  (Pl.'s Answer to Req. for Admis. No. 3.) Although Matthews has alleged certain injuries, she has not alleged that she lost her foot or hand, the whole thumb or finger, or all of her sight.  Consequently, she is due no benefits under Coverage S and summary judgment in favor of State Farm is warranted.

CONCLUSION

For the reasons set forth above, the Motion for Partial Summary Judgment filed by Defendant, State Farm Mutual Automobile Insurance Company, is **DENIED AS MOOT;** and the Amended Motion for Summary Judgment, filed by Defendant, State Farm Mutual Automobile Insurance Company, is **GRANTED**.  The Clerk is **FURTHER ORDERED** to close this case.


**DATED:  June 2, 2005**                         **S/RUDY LOZANO, Judge**
                                   **United States District Court**